IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DION THOMPSON (#M-18222), | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 1288 |
| | ) | Judge John J. Tharp, Jr. |
| v. | ) | |
| | ) | |
| CORRECTIONAL OFFICER | ) | |
| PRENTISS JONES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dion Thompson (hereinafter, "Thompson" or "Plaintiff"), presently in state custody at Menard Correctional Center, filed suit pursuant to 42 U.S.C. § 1983, alleging excessive force. More specifically, Plaintiff alleges that in December of 2010, while incarcerated at the Cook County Jail, Defendant Correctional Officer Prentiss Jones (hereinafter, "Defendant Jones") punched him in the jaw while Plaintiff was handcuffed. Plaintiff alleges that due to the excessive force, he suffered a fractured jaw. Defendant filed his motion arguing that he is entitled to judgment because Plaintiff failed to exhaust his administrative remedies prior to filing suit, as required under 42 U.S.C. § 1997(e). For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND

Thompson was a pre-trial detainee at the Cook County Department of Corrections ("CCDOC") from October 22, 2008, to December 20, 2010. (See Defendant's Statement of Facts ("DSOF"), ¶1). Defendant Jones is a correctional officer at the CCDOC. (DSOF ¶2). Plaintiff filed a complaint on April 1, 2011, alleging that on December 8, 2010, while Plaintiff was assigned to protective custody in Division 9 of the CCDOC he

was attacked by another inmate, Jesus Duran ("Duran"). (DSOF ¶5). Plaintiff claims that while Officer Loy was transporting him to a different division, Duran attacked Plaintiff from behind, blind-siding him and hitting him on his head several times. (DSOF ¶6).

Officers responded and broke up the altercation. (DSOF ¶7). Plaintiff was handcuffed and escorted to a holding cell by Officers Tedesco, Mueller, and Jones. *Id.* While on an elevator with Officers Tedesco, Mueller and Jones, Plaintiff claims that Officer Jones hit Plaintiff from the side, allegedly causing a fracture to Plaintiff's jaw on the right side. (DSOF ¶8).

Plaintiff went to the Cermak Health Center, the medical facility for the Cook County Jail, on the same day. (DSOF ¶9). A paramedic gave him Ibuprofen and told him to come back for X-rays. (*Id.*) Plaintiff received X-rays and Dr. Marques, a Cermak physician, told him that he had a healing fracture in his right side lower jaw. (*Id.*) Dr. Marques ordered Plaintiff to be on a soft diet, to continue to take Ibuprofen for pain, and to see an oral surgeon. (*Id.*)

Twelve days after the alleged incident with Defendant Jones, on December 20, 2010, Plaintiff was transferred to Stateville Correctional Center, a state prison under the administration of the Illinois Department of Corrections ("IDOC"). (DSOF ¶10). While in IDOC custody, Plaintiff had his wisdom tooth pulled and his jaw wired shut. (DSOF ¶11). The wires were removed and Plaintiff was fitted for arch braces. (*Id.*) Once the braces were removed, the jaw was healed. (*Id.*)

The "Detainee Grievance Procedure" was available to all inmates at CCDOC in 2010. (DSOF ¶14). The Detainee Grievance Procedure states that an inmate must

properly file a grievance within fifteen days after the alleged grievable offense and must appeal the grievance. (DSOF ¶15).

Plaintiff did not file any grievances regarding the incident of December 8, 2010. (DSOF ¶16). Plaintiff stated in his deposition that he tried to grieve the incident, but was unable to get a grievance form. (*Id.*) Plaintiff also stated that he complained about the incident to Chief Thomas of Division 9 the day after the incident. (DSOF ¶17).

In the event that an inmate is transferred to a state correctional facility, the CCDOC continues to accept and respond to grievances and appeals of grievances via U.S. mail. (DSOF ¶18). Responses to grievances and appeals are returned to the individual via U.S. mail. (*Id.*) Plaintiff is aware of the CCDOC Detainee Grievance Procedure because he has filed grievances before. (Exhibit A, 56:23-25, 57:1). Plaintiff has been previously involved in another civil lawsuit, in which he was the plaintiff. (Exhibit A, 8:19-23).

## LEGAL STANDARD

A party is entitled to summary judgment if all the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine dispute as to a material fact

exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001).

Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, with admissible evidence, that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

When Defendant filed his motion for summary judgment, he included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" (Doc. 39) as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982); and Local Rule 56.2. This notice clearly set out the requirements of this Court's Local Rule 56.1. In particular, the notice explains that Thompson's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

Local Rule 56.1(b)(3) requires a party opposing a motion for summary judgment to file:

> (A)  a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

> (B)    a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b). Despite being given this notice, Plaintiff failed to respond to Defendant's Rule 56.1 statement of facts.

Being undisputed, the facts set forth in Defendant Jones' Rule 56.1 statement are deemed admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("rules apply to uncounseled litigants and must be enforced"); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). Specifically, the district courts may require strict compliance with Local Rule 56.1, even though the plaintiff is proceeding pro se. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process).

Because Plaintiff is proceeding *pro se*, however, the Court will grant him considerable leeway and take into account material in the record, including his deposition testimony in order to meet its obligation to view the record in the light most favorable to the non-movant. However, the Court will entertain Plaintiff's testimony only insofar as he could properly testify about the matters asserted. *See* Fed. R. Evid. 602.

## DISCUSSION

Based on the record presented, the Court cannot entertain Thompson's claim of excessive force because Defendant Jones has demonstrated that Thompson failed to exhaust administrative remedies prior to bringing suit. The Prison Litigation Reform Act of 1996 ("PLRA") contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner*, 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).

An inmate must comply with the rules established by the State (or, in this case, the county) with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court). In order to exhaust, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

Thompson alleges in this suit that on December 10, 2010, Defendant Jones punched him and fractured his lower right jaw. (DSOF ¶8). Plaintiff also alleges that he had just been in a physical altercation with another inmate, Jesus Duran, who punched him repeatedly in the head, that the altercation had to be broken up by officers, and that

after the alleged battery by Defendant Jones he received medical care art Cermak Health Services. (DSOF ¶¶5-7, and 9).

Plaintiff admits that he filed no grievance regarding the incident involving Defendant Jones. (DSOF ¶16). There is no dispute that CCDOJ had a grievance procedure available in 2010. (DSOF ¶14) The CCDOJ policy requires detainees to file a grievance within fifteen days of the alleged grievable offense. (DSOF ¶15). Inmates at the Cook County Jail receive a handbook describing basic programs and procedures. *See* John Howard Association's Court Monitoring Report, filed on May 12, 2000, in *Duran v. Sheahan*, 74 C 2949 (N.D. Ill.) (reflecting that the Cook County Jail has an established and publicized grievance procedure). Plaintiff admits to being aware of the grievance procedure and to using it in the past. (See Defendant's statement of facts, ¶19).

Nevertheless, Plaintiff claims that the grievance procedure was not available to him. (DSOF ¶¶ 14, 16). Courts have held that there are several ways in which an administrative process might not be available to a prisoner. For example, if grievances are to be filed on a particular form but the form is never provided to the prisoner, then there is no "available" remedy, despite its hypothetical possibility. *See Minor B v. Duff,* Case No. 06 C 4912, 2009 U.S. Dist. LEXIS 61109, *35 (N.D. Ill. July 17, 2005) (Kendall, J), *citing Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). Similarly, threatening a prisoner with violence for attempting to use an administrative process makes that process unavailable. *See id., citing Hemphill v. New York*, 380 F.3d 680, 688 (2nd Cir. 2004). Plaintiff failed to file a grievance after the incident while he was housed at CCDOJ and there is no evidence that he was threatened, with violence or otherwise, in an effort to deter him from requesting a grievance form.

Plaintiff asserts that he was unable to get a grievance form from December 8, 2010 to December 20, 2010, when he was transferred to the custody of IDOC. (See Plaintiff's deposition, p. 56). However, the CCDOC grievance policy provides that if grievance forms are unavailable, a detainee may submit the grievance on ordinary writing paper. (See Defendant's Exhibit C, attachment 1, Section III. B. 1). Plaintiff has not contended that he was unable to submit a grievance in that fashion.

Additionally, Plaintiff states that he complained, informally, to a correctional official, seemingly indicating this should excuse the exhaustion requirement. (See Defendant's statement of facts, ¶17). However, the Seventh Circuit has held that informal complaints are not a substitute for the formal process made available by the government for inmates to exhaust their administrative remedies, and a prisoner must comply with all steps prescribed by the jail's grievance system. *Twitty v. McCoskey*, 226 Fed. Appx. 594, 596 (7th Cir. 2007); *citing Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Kaba v. Stepp*, 458 F.3d 678, 683-84 (7th Cir. 2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002).

Because Plaintiff believed the process to be unavailable to him after he was transferred to Stateville Correctional Center on December 20, 2012, he did not file a grievance after the transfer. (See Plaintiff's deposition, p. 57). He contends that he attempted to have family contact CCDOC to inquire about the grievance process, but that they were told that he could not file a grievance because he had been transferred. (See Plaintiff's deposition, p. 57). However, the CCDOC policy is to accept grievances from inmates who transfer into the state prison system and to respond to those grievances via

U.S. mail. (DSOF ¶18). Further, any such testimony about what his family members had allegedly been told is inadmissible as hearsay. *See* Fed. R. Evid. 802.

The Seventh Circuit has held that transfer to a different correctional facility does not in and of itself make the grievance process unavailable, provided the transfer does not terminate the administrative process. *Flournoy v. Schomig*, 152 Fed. Appx. 535, 538 (7th Cir. 2005). Plaintiff's beliefs about the availability of the grievance process do not excuse exhaustion. *Twitty*, 226 Fed. Appx. at 596; *citing Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000) (42 U.S.C. § 1997e(a) "says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them."); *see also Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001) (assistant attorney general's response to prisoner's informal complaint had no duty to inform prisoner of prison's formal grievance procedures). There is no suggestion here of any affirmative effort on the part of the jail to prevent Thompson from learning about and pursuing the grievance procedure, *see Dole v. Chandler*, 438 F.3d 804, 809. As such, he bore the responsibility of taking the appropriate steps to comply with the proper procedure. *See Yousef*, 254 F.3d at 1221; *Chelette*, 229 F.3d at 688.

The evidence before the Court indicates that the grievance procedure was available to Plaintiff both while he was at CCDOC and Stateville Correctional Center. In spite of the fact that he was aware of the procedure and had utilized it in the past, he did not file a grievance regarding the alleged December 8, 2010, incident with Defendant Jones. The Court finds that no reasonable trier of fact could determine that the grievance

process was unavailable to Plaintiff at the time of his alleged injury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To satisfy the PLRA's exhaustion requirement, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits . . . ." *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999. The Court finds that Plaintiff did not exhaust his administrative remedies prior to filing suit. Consequently, the Court grants judgment to Defendant Jones.

Although the time for submitting a grievance has expired per CCDOC's policies, the dismissal of Plaintiff's claim is without prejudice, as this Court does not rule on whether a state court would apply an exhaustion requirement similar to that of § 1997e(a) with respect to Plaintiff's claims. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (for that reason, "*all* dismissals under § 1997e(a) should be without prejudice"). In short, the Court's ruling does not preclude the Plaintiff from pursuing any relief that may be available to him through the state court. But because by operation of § 1997e(a) Plaintiff has no further recourse in federal court, the dismissal without prejudice nevertheless constitutes a final, appealable, order. *Maddox v. Love,* 655 F.3d 709, 716 (7th Cir. 2011) (order dismissing § 1983 claims for failure to exhaust administrative remedies is appealable where there are no further remedies that plaintiff can pursue); *Barnes v. Briley,* 420 F.3d 673, 676 (7th Cir. 2005) (same).

If Plaintiff wishes to appeal this final judgment, he may file a notice of appeal in this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion

for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The Plaintiff is advised that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant Jones' motion for summary judgment [#38], dismisses the complaint without prejudice, and enters judgment for Defendant.

Date: August 24, 2012

_____
John J. Tharp, Jr.
United States District Judge